Good morning, Your Honors, and may it please the Court, Alyssa Cooley-Yonezawa for petitioner. I would like to reserve three minutes for rebuttal, please. This case presents a recurring question among the circuits. What did Congress mean in 1996 when it added rape as an aggravated felony to the INA? Four circuits have answered that question so far in terms of matter of Keighley, and four have disagreed with the BIA's interpretation in matter of Keighley. The 5th, 6th, 8th, and most recently 11th circuits have excluded digital penetration from the generic definition of rape. The government still asks this Court to disagree with sister circuits, ignore the plain, unambiguous language of the INA, and to rewrite the generic definition to include conduct on the outer contours of the Nevada statute, conduct that is overbroad in several respects. When determining the generic definition of aggravated felonies, as always, we must start with the text. In 1996, Congress... You go ahead, Judge. Okay. So even if I were to agree with you as to whether our sister circuits are correct, I believe that we as a three-judge panel, and I apologize if I'm going to mispronounce the name of the petitioner in the 2018 case, but I believe we're bound as a three-judge panel under Miller v. Gammie by L. Maksumy v. Sessions. I think that this issue was clearly before the panel. I think the panel's ruling was clear, including with its reliance on Keighley. So how can we as a three-judge panel rule the way you want, given the L. Maksumy case? Thank you, Your Honor. In L. Maksumy, as the court knows, it was a California sodomy statute. In Castro Bias in 2000, this court already examined the generic definition of rape in the INA, and it concluded that the generic definition was non-consensual sexual intercourse with a person. And then in 2018, under L. Maksumy, the court expanded that definition to include anal intercourse as part of the generic definition. The matter before the court right now is the Nevada sexual assault statute, which is far broader than the statute that was at issue in L. Maksumy in 2018 and also in Castro Bias in 2000. The minimum conduct under the Nevada sexual assault statute is not whether vaginal intercourse is part of the generic definition or anal intercourse is part of the generic definition. I know my colleague has a question, but sort of, counsel, where I am on this is maybe an in-bank court would agree with you, maybe the Supreme Court would agree with you, but from my perspective, we're bound by L. Maksumy, and I don't find your argument as to the way we can distinguish it convincing. But I'll let Judge Sanchez have a question. That was going to be my first question of whether we're bound. L. Maksumy was dealing with a sodomy statute, a California sodomy statute. So in expanding its notion of, you know, penetrative sexual conduct from Castro Bias, it was reaching the question of, you know, with a penis, but it didn't reach the issue of digital penetration, did it? No, it didn't. But at least I would think that we're bound with the notion that whether it's vaginal or anal intercourse, that is covered by the generic definition of rape. Would you agree with that? I would agree that vaginal intercourse is the—our position is that the generic definition of rape is— No, I mean, under L. Maksumy, I'm trying to figure out what binds us, what binds this panel, and what does not. In L. Maksumy, the court was referencing a 2014 Blacks Law Dictionary that included anal intercourse in the generic definition, or in the definition of rape. Respectfully, in the definition that the court referred to, it was 2014. It was the Blacks Law edition that was not available at the time that Congress added rape. But that's an argument as to why it got it wrong. Correct. But we would still—even if this court would need to go en banc to adjust that decision to make a clarification in the L. Maksumy case about the contemporaneous definition of rape at the time that Congress added it to the INA in 1996 and not using a source that wasn't available to Congress at that time, the Nevada statute is still much broader than the statute that was at issue in L. Maksumy. The Nevada statute, the minimum conduct under the statute is digital or object penetration on an animal, not even of a person. And so the Nevada statute is broader than the definition in Castro-Bias. Have you pointed in that area to any case which Nevada has ever brought under this statute or some act with an animal? No, Your Honor. We did not point to any case in the brief, but that is because the Nevada statute is overbroad in that regard on its face.  But you've answered my question. You have not found any case either in an appellate record or a trial court record that you brought to our attention where that was a charge actually brought by a prosecutor in Nevada? Not at this time, Your Honor. But again, it is overbroad on its face. The Nevada statute says that forced penetration on another person or where a person forces another person to make a penetration on themselves or on a beast, on a beast. And in 1996, at the time that Congress added rape to the INA, no rape statute included forced penetration on a beast. And now the government points to some statutes in 1996 of the states that included penetration by a beast, but that is not the same as the language that the Nevada legislation used. But also your argument is that the agency's decision in Keeley was just wrong. Yes, that is our argument. And that the El Muxume panel was also just wrong in relying on Keeley. Your Honor, the El Muxume panel didn't necessarily engage with matter of Keeley in the same ways that the 5th, 8th, 6th, and 11th circuits did. Yeah, I agree with you, but it did engage with it. And it did say, for example, after an exhaustive survey of state rape and sexual assault laws, the BIA concluded that the generic definition of rape includes, at a minimum, acts of vaginal, anal, and oral intercourse. And we relied on that in this case, perhaps wrongly, perhaps not. But that's part of the holding, right? Yes, but the question is, what does intercourse capture? The El Muxume court did refer to the BIA when it said, at a minimum, generic rape includes vaginal, anal, or oral intercourse. What does intercourse mean? And I think this case presents an opportunity for the court to clarify what intercourse, sexual intercourse, meant when the 9th Circuit used it, and El Muxume. Now, I don't think that the court needs to go en banc to make that clarification, especially in light of later doctrinal developments like S.U.L. Quintana, who laid out the steps, the statutory interpretation steps. I want to make sure we're not ships passing in the night. I read El Muxume, and I may be mispronouncing it, as holding that the ordinary, contemporary, and common meaning of rape as used in the statute is not limited to vaginal intercourse, but is inclusive of any physical sexual conduct, especially involving the penetration of the vagina by the penis. Do you agree that El Muxume stands for that proposition? I agree that it does, but what's important to note in that case is that the Black's Law Dictionary that the court was referring to was issued in 2014, and the definition that it relies on had varied substantially since 1990, the addition that the Castro-Bias court relied on. And so while it considered the same source, Black's Law Dictionary, for that definition, it was a different version almost 20 years in the future. Forgive me for interrupting you. The 1999 version of Black's Law Dictionary, though, was substantially the same as what the El Muxume court relied upon from later. Correct? The 1999 edition of Black's, which also postdates the addition of rape as an aggravated felony, though by many years, starts with the common law definition. Unlawful sexual intercourse is committed by a man with a woman, not his wife, through force and against her will. The common law crime of rape required at least a slight penetration of the penis into the vagina. The second definition, which was added since 1990, and again, this definition wasn't available in 1996 when Congress added rape as an aggravated felony, said unlawful sexual activity, especially intercourse with a person, usually a female, without consent and usually by force or threat of injury. And so usually, if the definition of rape usually included forced sexual intercourse of the insertion of the male sex organ into the female organ, can we say that Congress in 1996, when it added rape as an aggravated felony, took the impression that sometimes, usually, it's penetration by a penis into a vagina? But you're back to arguing why El Mokzoumi was wrong, because it was looking at the wrong year. Yes, that's correct. And yet, we can't do anything about that. It is binding precedent for us. That's correct. This panel can't do anything about the fact that El Mokzoumi relied on the wrong dictionary definition almost 20 years into the future. I mean, the panel did, well, this panel did rely on a different year of the Blacks Law Dictionary than Castro-Bias had, because Castro-Bias actually looked at the 1990 version of the Blacks Law Dictionary for its source. So I don't know that we're necessarily constrained to just have to rely on the 2014 definition. But I guess here's my question. All these different definitions are a little bit all over the map. Your definition doesn't seem to coincide with a common law definition of rape. Would you agree? Because you're expanding it beyond just vaginal intercourse between a man and a woman. So where are you getting your definition from? Your Honor, our definition is the common law definition. So under your definition, any statute that, for example, considered rape as a woman raping a woman or a man raping a man would be overbroad because the common law recognized rape as a crime of a man having vaginal intercourse with a woman, yes? Yes, that would be correct. So every state, or virtually every state, includes within rape that it can be committed by a person of any gender, yes? That's correct, Your Honor. So your definition would throw those all out? Well, we have to look at what Congress intended. But my question is your definition would throw all those out, yes? Yes. All right. On a completely different topic and quite possibly an irrelevant topic, and I apologize, but I do want to just factually get this. As I understand it, your client's request for a deferral under CAT was granted. Is that still the status quo? Yes, Your Honor. So your client does not face at this point deportation? Currently, no. But as Your Honors may know, the government has still been deporting CAT recipients and withholding of removal recipients to third countries. And so he could still be deported just as a recipient. Has he faced any type of threat of that as far as you know? Not at this point. I know that you may not be up on all of those facts, and I'm going to ask your friend this question, too. But as far as you know? Not at this time, Your Honor. And I would like to reserve our time. Yeah, we've taken up an awful lot of your time. How much did you ask for for a rebuttal? I asked for three, Your Honor. We'll give you three minutes. Thank you. Good morning, Your Honors, and may it please the Court. Melissa Lott on behalf of the United States Attorney General. This Court should deny the petition for review because Nevada sexual assault is generic aggravated felony rape. Rape is a common law offense, but the common law version of the offense was obsolete by the time rape was added to the INA in 1996. So we have to look at what the commonly understood elements of rape are, and that is sexual intercourse without consent. At the time rape was added in 1996, Congress would have understood rape to have its generic contemporary meaning, as understood in most states under the Supreme Court's decision in Taylor. And to understand what the meaning was in the states, we have to look past the label that the states use. Counsel, can we start actually with our Ninth Circuit precedent and to get your views on to what extent are we bound by the prior panel's decisions? What is your view of El Mxume and its binding effect on this panel? Yes, Your Honor. In El Mxume, the Court decided that nonconsensual anal intercourse was generic rape. It cited matter of Keeley favorably. However, it didn't affirmatively reach the issue of digital penetration. Which is the issue before us.  So in your view, we're not bound by it because there's a bit of an open space with that issue? I would agree that El Mxume is the starting point, and it is binding on the issue that aggravated felony rape includes anal intercourse, but it does not because it doesn't address the issue of digital intercourse. Well, let me ask you this. It's clear that there's at least a conflict between El Mxume and the Fifth Circuit with respect to that point, because as Gonzalez said, it's just common law rape which only occurs between a man and a woman and excludes sodomy. Would you agree with that? Yes. And I would also agree that Berry, the recent Eleventh Circuit case, the Eleventh Circuit also said that they are adopting a common law definition. Okay. And so what is your – because there are now four circuits that have disagreed with the government's position on whether rape encompassed broader forms of sexual assault, sexual battery, other things, and Berry is the most recent iteration of that. So why are all those courts wrong in your view? In the government's view, those courts are wrong because they – I think two things. One is they are starting from the assumption that because – they're starting from the assumption that rape – I'm sorry, let me back up. Well, let me – here, I'll just – because I've spent some time with this thinking about this. The main points from those circuit courts seem to be start with the plain language of the INA, and there's the word rape, and then there's sexual assault of a minor. And if Congress intended for those to be synonymous, then it would make sexual assault of a minor superfluous. Yes. And there's no cross-referencing. And then you have other sort of dictionary definitions, which I think are a little bit of a moving target. But they generally don't ever get into digital penetration when they talk about things, at least not explicitly. And then thirdly, depending on how you look at the different state surveys, if you were to just look at the states that have rape as – in a codified way, virtually none of them have digital or object penetration in those provisions. And where they do criminalize it, it's in these broader provisions for sexual assault and sexual battery. So I think I'm summarizing some of the main pieces of what – the through line with the different circuit courts. So maybe you can kind of react to those and tell me why those are wrong. Yes. So rape and sexual abuse, as it's used in sexual abuse of a minor in the INA, those do have distinct meanings. Rape is sexual intercourse without consent. That's the generic meaning. And sexual abuse of a minor, sexual abuse can – it's much broader. It can include those sexual contact crimes. But if you just focused on the states – when you look at the states, because well before 1996, so many states had relabeled the crime of rape. And they did that because they wanted to emphasize that it was a crime of violence, not a crime of uncontrollable passion. And so you had 26 states plus Washington, D.C. that relabeled the crime. So they called it things like sexual assault, sexual battery, again, to emphasize that it was violent. And they overhauled their – all of their sexual crimes and they put them in – But I guess what's interesting about that is it's kind of – the meaning behind that is almost in the eye of the beholder because some of these circuits have said yes, we agree that these things have been expanded. And that's a reason to indicate that Congress understood the difference between rape and these broader definitions for sexual assault and other things. And so when Congress used the word rape textually in the INA, it had a specific meaning, something either akin to or closer to the common law meaning. And so, Your Honor, where I think that the other courts – what they have overlooked is that in those states that relabeled the crime, they didn't legalize rape. They didn't get rid of rape. What they did was they just renamed the offenses. But you can still find – you can still identify rape within those offenses. And you can do that by finding the sexual intercourse or sexual penetration crimes. So some states use the definition of sexual intercourse. Some use sexual penetration. It's just, you know, states use one or the other. And so you can find it by looking at the definition. And then they set the rape crimes out either through the definition, through grading them in different degrees. And so you can differentiate the rape crimes in these state statutes from the sexual contact crimes, those crimes that would fall under sexual abuse of a minor and would not be rape. I guess I would say this is the concern that I have with this is the government seems to have chosen, and the BIA under a matter of Keeley, a certain line to draw somewhere and then gone and looked at state statutes to kind of fit that category. But, you know, to take the El Mazoomi definition of sexual touching, that could be much broader than penetration, for example. And as you just said, there are different degrees to sexual assault crimes in different states. So why is it that we should impute into Congress this particular line drawing that the government chose as opposed to something else? You know, because sexual touching, sexual activity, those are all pretty malleable phrases. Well, Your Honor, I would push back on that just a little bit, that I don't think that it's the government is doing this line drawing. I think that when you look at the Supreme Court's decision in Taylor, if a common law version of a crime has become obsolete, then the Supreme Court has said that that's not how the term should be construed. And this is the case with rape. So we know that the common law version of the crime, carnal knowledge of a woman forcibly against her will, that is obsolete. And in fact, well before 1996, most states had gotten rid of the Common Law Act as the meaning of rape in their statutes. Only 12 states used the Common Law Act in their statutes. But we know that the core of the offense, the core actus reus, is sexual intercourse without consent. And so that is the line drawing. That is the core of rape. And so you can see that if you look at all of the states, that you can go by the definition. And so even if they've called it different things, that is what rape is. And if you look at the Taylor decision, the Supreme Court has said that the generic contemporary meaning of a term, it has to be defined separate from the vagaries of state law labels. And in Taylor, you know, they give the example of Michigan burglary, which had been, you know, placed in, it had been renamed breaking and entering and, you know, graded into different. I mean, would you agree that if we were to conclude that digital penetration is part of the definition of generic rape, we would be the first circuit to do that? We would be creating that split on this particular point about digital and object penetration? I would agree with that, Your Honor, but I would also, I would say that that is the correct result because the majority of states, that is how they categorize it. They categorize it as sexual intercourse or sexual penetration. They do not put it into the broader category of sexual contact, which would fall under the sexual abuse of a minor crimes. Am I reading your brief correctly that the government is asking us, putting aside the issue of whether or not Al-Maksoumi is binding on us, that the government is asking us, I think you have it at 15 or 16 in your brief, to afford Skidmore deference to the Keeley decision? I think that, yes, Your Honor, I think that either you could reach it as a best read issue, but also, yes, I think that because it is a persuasive decision, because it is the best read, I think that you could also give it Skidmore respect. And I'm still not in the same place as the government is on whether Al-Maksoumi is binding, but I thank you for your candor as to the government's position. The question I asked your friend is, are you aware of any facts which would indicate that the government is seeking to deport the petitioner? Your Honor, that is, so to my knowledge, that's not at issue at this time. And if you need anything further, I'm happy to follow up. If I may follow up on Judge Sanchez's questions. Your argument here before us, for you to prevail, is your argument logically inconsistent with the holdings from the other four circuits, Perez, Keeley, Keto, and the Eighth Circuit, and Berry? Is it absolutely logically inconsistent? Is it logically inconsistent? Is there any threading the needle? Is there any way to say, are you arguing necessarily that those four circuits got it wrong? I'm arguing that those circuits read the states that relabeled rape, that they read those states as not punishing rape as discrete offenses, that they read those as just sort of catch-all sexual assault or sexual battery crimes. So I think that because those, the other circuits, they didn't consider the states that had relabeled the crime, and they looked at a state survey of only the states that kept the rape label, then that just, I guess, that's a completely different, you get completely different numbers with a state survey that way. So I'm not sure what your answer to my question was. If we rule in your favor, if we affirm, are we necessarily setting up a circuit split? Or is there something different about this case where your argument can be, yes, those four circuits got it right, but you can still win here because of something. Is there any something, or is, if you win, is there necessarily a circuit split? On the issue of digital penetration, yes, there is necessarily a circuit split. But again, I think that the result is correct. And I would just emphasize that with the states that kept the rape label, 12 of those were common law rape. A handful of those included sodomy, and seven included digital and object penetration. But overall, 31 states plus Washington, D.C. total included digital and object penetration in their statutes. Thank you, counsel. Thank you. Thank you. Thank you, Your Honors, for giving me three minutes. The government argues that Congress, because the term rape was used, only used in 24 statutes, Congress would understand rape based on how the states interpreted it. But this Court and the U.S. Supreme Court has always said that the interpretation of federal law is not to be dependent on state law. Congress had already walked away from the term rape in other parts of its code, particularly criminal code. It also added the Sexual Abuse Act, where it included the essential elements of rape, but broadened it and added more catch-all sex crimes, as the government noted. And so if Congress had walked away from the term rape leading up to 1996, and the states had walked away, more of the states had walked away from the term rape, then why would Congress, when it had limitless possibilities, when it added rape, when it sought to expand what constituted an aggravated felony in 1996, why did Congress still stick with rape? If the term was obsolete, and if Congress didn't mean what it said, then why did it say just rape? And I think that is the critical flaw that the BIA makes in matter of Keeley, is that it put the state's interpretation of an act above what the actual text said, and put the state's interpretation above what Congress's interpretation was. Counsel, before we let you go, I wanted to switch gears for a second and ask about one of the arguments about consent, and the know or should have known mens rea. That argument was, I believe, not brought up before the IJ, and the BIA declined to reach it because it was waived. So why is that something that we would be able to hear now? Yes, Your Honor. As this court has held, claims are waived, not arguments. It's important to remember that Petitioner was a lawful permanent resident charged with deportability before the IJ. It was the department's burden to prove that the Nevada sexual assault statute was a categorical match to the aggravated felony rape offense. And all that Petitioner had to do was object. He just had to contest that it was overbroad. And he did put forth arguments that the act, the sexual act, was overbroad, and also the mental states were overbroad. And that meets his burden of preserving any claims. The claim was that the statute, the Nevada sexual assault statute, was overbroad, and he preserved that. And so the arguments about negligence as a mens rea is properly before this court. Okay. All right. We thank counsel for their arguments. The case just argued is submitted, and we'll take a 10-minute break. Thank you, Your Honor. All rise.
judges: BENNETT, SANCHEZ, Holcomb